UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TERESA PAT MORRILL,

Plaintiff,

v.

ANDREW M. SAUL,[1] Commissioner of Social Security,

Defendant.

---

**DECISION and ORDER**

**19-CV-6279F**
(**consent**)

APPEARANCES:

LAW OFFICES OF KENNETH R. HILLER, PLLC
Attorneys for Plaintiff
KENNETH R. HILLER, and
MARY ELLEN GILL, of Counsel
6000 North Bailey Avenue, Suite 1A
Amherst, New York 14226

JAMES P. KENNEDY, JR.
UNITED STATES ATTORNEY
Attorney for Defendant
Federal Centre
138 Delaware Avenue
Buffalo, New York 14202
and
KATHRYN L. SMITH
Assistant United State Attorney, of Counsel
United States Attorney's Office
100 State Street
Rochester, New York 14614
and
FRANCIS D. TANKARD, and
JENNIFER E. WHELAN
Special Assistant United States Attorneys, of Counsel
Social Security Administration
Office of the General Counsel
601 E. 12th Street, Room 965
Kansas City, Missouri, 64106

---

[1] Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On August 5, 2020, this matter was assigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. 15). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on October 25, 2019 (Dkt. 11), and by Defendant on November 18, 2019 (Dkt. 13).

## BACKGROUND

Plaintiff Teresa Pat Morrill ("Plaintiff"), brings this action under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications filed with the Social Security Administration ("SSA"), on June 15, 2015, for Social Security Supplemental Security Income ("SSI") under Title XVI of the Act ("disability benefits"). Plaintiff alleges she became disabled on December 15, 2003, based on Crohn's disease (inflammatory bowel disease), scar tissue damaging her large intestine, which was lying on her pelvic bone from damage, a learning disability, bowel movement problems and blockage, damaged entire digestive system, severe back pain, sever migraines causing paralyzing left arm/leg, poor diet based on digestive system issues, acid reflux disease, vaginal pain, and colitis. AR[2] at 177, 181. Plaintiff's application initially was denied on November 25, 2015, AR at 94-106, and at Plaintiff's timely request, AR at 113-15, on March 20, 2018, a hearing was held in Rochester, New York ("Rochester"), before administrative law judge John Costello ("the ALJ). AR at 65-

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on July 12, 2019 (Dkt. 7).

93 ("administrative hearing"). Appearing and testifying at the administrative hearing were Plaintiff, then proceeding *pro se*, and vocational expert ("VE") Tina Malik ("the VE").

On June 26, 2018, the ALJ issued a decision denying Plaintiff's claim, AR at 47-64 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council. AR at 157-58. On February 25, 2019, the Appeals Counsel denied Plaintiff's request for review, AR at 1-7, rendering the ALJ's Decision the Commissioner's final decision on Plaintiff's disability benefits application following which Plaintiff commenced the instant action seeking review of the ALJ's Decision.

On October 25, 2019, Plaintiff moved for judgment on the pleadings (Dkt. 11) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 11-1) ("Plaintiff's Memorandum"). On November 18, 2019, Defendant moved for judgment on the pleadings (Dkt. 13) ("Defendant's Motion"), attaching Commissioner's Brief in Response Pursuant to Local Civil Rule 5.5 for Social Security Cases (Dkt. 13-1) ("Defendant's Memorandum"). Filed on December 9, 2019, was Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 14) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## FACTS[3]

Plaintiff Teresa Pat Morrill ("Plaintiff" or "Morrill"), born October 21, 1971, was 32 years old as of December 15, 2003, her alleged disability onset date ("DOD"), and 46

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for determining the pending motions for judgment on the pleadings.

years old as of June 26, 2018, the date of the ALJ's Decision. AR at 60, 160, 177. Plaintiff is married and lives with her husband and an adult son. AR at 160-61, 194.

Plaintiff attended school through tenth grade in special education classes, dropped out of high school during eleventh grade, reads at the third to fourth grade level, and has not obtained a GED. AR at 70-73. Plaintiff has a driver's license and often drives herself to appointments and grocery shopping. AR at 197. Plaintiff's work experience includes as a mechanic, but lifting restrictions imposed as a result of her physical impairments prevent her from returning to such job. AR at 183, 204-05, 211.

Plaintiff has a history of ulcerative colitis and Crohn's disease which as of 2014 was in remission, but which resulted in scarring of Plaintiff's large intestine and rendered Plaintiff unable to have a bowel movement without laxatives. AR at 357. Plaintiff obtained treatment for her digestive condition largely through Rochester General Regional Health ("Rochester General") and Strong Memorial Hospital ("Strong") in Rochester, New York, since at least 2013. Plaintiff's Crohn's disease resulted in scarring of her large intestine and chronic constipation for which Plaintiff needed to take laxatives which then caused diarrhea. AR at 267, 331-33. Plaintiff eventually was found to have an outlet obstruction for which Plaintiff opted to undergo a colostomy to deal with her chronic constipation. AR at 336. On September 30, 2015, Plaintiff underwent a laparoscopic colostomy at Strong. AR at 380-90, 398-400.

At the administrative hearing, Plaintiff explained that since the colostomy, she continues to have constipation requiring Plaintiff use more laxatives than prior to her surgery, resulting in "blow outs," *i.e.*, accidents with intense leaking or rupturing of the olostomy bag, and Plaintiff also has problems urinating because of scar tissue. AR at

81-82, 85. The first hypothetical the ALJ posed to the VE included a younger individual with limited education and work experience, able to perform light, unskilled work, limited to simple routine tasks and with a restroom nearby and always available for Plaintiff's use, AR at 88-90, for which the VE identified three jobs including house sitter, garment sorter, and laundry worker. AR at 90. When the ALJ modified the hypothetical to include occasionally needing to take unscheduled breaks to use the restroom up to eight times a day, the VE stated there was no unskilled work in the economy that could be performed. *Id*. Similarly, whether the ALJ modified the hypothetical for the individual to be off task 20 percent of the workday, the VE again responded there was no unskilled work that could be performed in the economy. *Id*. at 90-91.

## DISCUSSION

### 1. Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2. Disability Determination**

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 15, 2015, the date of Plaintiff's disability benefits application, AR at 52-53, and suffers from the severe impairments of chronic inertia, status-post colostomy, myofascial pain syndrome, and depression, *id*. at 53, and non-severe impairments of asthma, migraines, gastroesophageal reflux disease, and trigeminal neuralgia, *id*., but that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 53-55. Despite Plaintiff's impairments, the ALJ found Plaintiff retains the RFC for work at the light exertional level, with ready access to a restroom and limited to simple, routine tasks. *Id*. at 55-59. Plaintiff has no PRW and thus no transferrable skills, *id*. at 59, yet given Plaintiff's RFC, age, limited education and ability to communicate in English, Plaintiff can perform jobs that exist in significant numbers in the national economy including as a house sitter, laundry worker, and garment sorter. *Id*. at 59-60. Based on these findings, the ALJ determined Plaintiff is not disabled as defined under the Act. *Id*. at 60.

Plaintiff does not contest the ALJ's findings with regard to the first three steps of the five-step analysis, but argues that in assessing Plaintiff's RFC at the fourth step, the ALJ erred by failing to make any specific functional findings regarding Plaintiff's need for unscheduled lavatory breaks and off-task time, and further erred by failing to obtain any physical opinion evidence regarding Plaintiff's RFC, Plaintiff's Memorandum at 13-18, and the ALJ abused his discretion in rejecting the third-party statements submitted by Plaintiff while proceeding *pro se* as untimely under the so-called "five-day rule." *Id*. at 18-21. Defendant argues the ALJ's RFC finding is supported by substantial evidence in

the record, Defendant's Memorandum at 13-23, and the ALJ properly declined to admit evidence that was untimely submitted. *Id*. at 23-26. In reply, Plaintiff argues Defendant's failure to dispute the record does not contain any functional medical opinion evidence establishes the ALJ improperly made a "common sense" determination regarding Plaintiff's RFC, Plaintiff's Reply at 1-5, and that Defendant also fails to "meaningfully respond" to Plaintiff's assertion that the ALJ abused his discretion in declining to accept third party statements Plaintiff proffered *pro se*. *Id*. at 5. Based on the parties' arguments, the court limits its consideration of whether the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence in the record and whether the ALJ's reliance on the "five-day rule" in declining to accept Plaintiff's third-party statements was an abuse of discretion. There is no merit to Plaintiff's arguments.

With regard to Plaintiff's assertion that the ALJ's failure to obtain any opinion evidence regarding Plaintiff's physical functioning capacity, Plaintiff's Memorandum at 15, the ALJ is not required to develop the record by seeking a physician's function-by-function assessment of the plaintiff where, as here, the record contains sufficient evidence to permit the ALJ to render a common-sense RFC determination. *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed. Appx. 5, 6-9 (2d Cir. Jan. 18, 2017) (upholding RFC assessment where ALJ discounted the claimant's only treating physician's medical source statement without remanding for acquisition of another medical source statement where sufficient evidence in the record, including years of treatment notes and evidence of the claimant's social activities permitted the ALJ to assess the RFC); *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. Apr. 2, 2013) (affirming District Court's decision that ALJ's determination that disability

claimant's RFC did not render her disabled was supported by substantial evidence, which did not include a function-by-function assessment, but included two consultative examinations which were consistent with an extensive medical record and the findings of one of the claimant's treating physicians); and *Pellam v. Astrue*, 508 Fed.Appx. 87, 90 (2d Cir. 2013) (upholding ALJ's RFC determination where physician's opinion was rejected but ALJ relied on physician's clinical findings and treatment notes"). In evaluating whether the requisite substantial evidence exists, the court must "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and the Commissioner's findings of fact may be rejected "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted). In the instant case, the medical record is extensive and contains sufficient evidence from which the ALJ was permitted to assess Plaintiff's RFC. *See Tankisi*, 521 Fed.Appx. at 34 (remand not required to further develop the record where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity").

Preliminarily, *Lowe v. Colvin*, 2016 WL 624922 (W.D.N.Y. Feb. 17, 2016), on which Plaintiff relies for the proposition that the ALJ was required to obtain a medical opinion regarding the number of unscheduled breaks Plaintiff was anticipated to need during a regular workday, Plaintiff's Memorandum at 15-18; Plaintiff's Reply at 3-5, is inapposite. Plaintiff's argument on this point is based on the ALJ's inquiry posed to the VE regarding whether an individual would be able to perform the jobs identified by the VE if the individual needed to take up to eight 15-minute bathroom breaks per day, or

be off-task up to 20% of a regular workday to use the restroom, with the VE responding such individual would not be able to perform any work within the national economy. AR at 90. In *Lowe*, the claimant's medical evidence showed the claimant with polyuria (excessive urination), requiring use of a restroom five to six times a day, and sometimes every 20 minutes. *Lowe*, 2016 WL 624922, at * 6. In contrast, in the instant case, Plaintiff does not complain of frequent need for a restroom, but of chronic constipation prior to undergoing a colostomy. AR at 267, 331, 333, 335, 357, 504, 523, 593-94, 601). Although after the colostomy, Plaintiff experienced some leakage and "blow outs" with her ostomy bag, the record establishes such events were attributed Plaintiff's failure to comply with her prescribed diet and medications. *See*, *e.g*., AR at 523 (October 26, 2017 treatment note reporting Plaintiff had "discontinued her bowel regime"); 601 (March 12, 2018 treatment note reporting Plaintiff was non-compliant with her diet, refuses to increase her fiber intake, and consumes rich food contrary to her physician's advice). Further, the record refers to only one incident where Plaintiff required more than the customary lavatory breaks with such incident occurring in November 2017 when Plaintiff reported having a bad bout of diarrhea requiring Plaintiff change her ostomy bag 15 times in one day, with the event attributed to Plaintiff's taking oxycodone, for which Plaintiff did not have a current prescription but was leftover from an old prescription. AR at 626. This evidence is sufficient to permit the ALJ to "glean" Plaintiff's need for lavatory breaks. *Miller v. Commissioner of Social Security*, 409 Fed.Appx. 384, 388 (2d Cir. 2010) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (remand not required where "clearly credible evidence" in the record established the ALJ's determination was supported by substantial evidence (quoting

*Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982))). Accordingly, the record contains substantial evidence supporting the ALJ's determination of Plaintiff's need for lavatory breaks posed by Plaintiff's impairment of status-post colostomy.

Further, the ALJ considered other evidence in the record establishing Plaintiff is able to perform light work, with the additional limitations of ready access to a bathroom and limited to simple, routine tasks. In particular, on May 6, 2016, Plaintiff presented to NP Leslie Palm-Schwarz ("NP Palm-Schwarz") at Rochester General for a work physical. AR at 504 ("Plaintiff is here for an exam so she can work at the Center for Disability Rights."). Following a July 7, 2016 examination by NP Palm-Schwarz in connection with complaints of abdominal pain, Plaintiff was diagnosed with gastroesophageal reflux disease ("GERD"), yet was also provided with a note clearing plaintiff to return to work on July 12, 2016. AR at 485. The ALJ also considered evidence of Plaintiff's activities of daily living, including that following a May 22, 2017 counseling session at Strong Mental Health, LCSW David Sulzgit reported Plaintiff was depressed, attributing some of her depression to her son's cutting off ties with his parents and thereby depriving Plaintiff from seeing her son's children, but also reported Plaintiff would continue watching her daughter's children, which gave Plaintiff "some sense of purpose, [because] without her job she is not sure what to do," AR at 615-16, that Plaintiff "cleans her house but it's very clean now," *id*., and that Plaintiff was considering returning to work because of financial difficulties, but that Plaintiff was waiting for her disability benefits application appeal to be decided. *Id*. On March 6, 2018, Plaintiff reported she tries to have her grandchildren over every day because it helps with her mood. AR at 596. Further, Plaintiff reported living with others, but being

able to tend to her self-care, clean, shop, cook, drive, engage in hobbies, and maintain relationships with family and friends. AR at 57. The ALJ also considered the absence in the medical records of Plaintiff reporting problems dealing with her ostomy bag, as well as that Plaintiff's medical examinations were generally unremarkable with Plaintiff receiving "relatively conservative" treatment following her September 2015 colostomy. AR at 57-58. Significantly, it is Plaintiff's burden to prove that limitations attributed to her impairments are more restrictive than reported in her medical record. *See Smith v. Berryhill*, 740 Fed.Appx. 721, 726 (2d Cir. 2018) ("ALJ did not 'arbitrarily substitute his own judgment for competent medical opinion'" where the claimant "had a duty to prove a more restrictive RFC, and failed to do so." (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)). Plaintiff has not met this burden.

Nor is there is any merit to Plaintiff's assertion, Plaintiff's Memorandum at 14-15, that the ALJ erred in finding Plaintiff was capable of performing light work is not supported by the record because an October 9, 2015 treatment note indicates Plaintiff was limited to lifting no more than 10 to 15 lbs., in contrast to light work which requires the ability to lift up to occasionally lift up to 20 lbs.[5] A plain reading of the relevant treatment note establishes it was prepared by Nurse Practitioner ("NP") Patricia A. Juergens ("NP Juergens"), after examining Plaintiff at Strong in follow-up to Plaintiff's

---

[5] As defined under the relevant regulations,

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(a).

colostomy surgery on September 30, 2015. AR at 402. Although NP Juergens "reminded" Plaintiff not to lift more than "10-15 pounds," *id*., and Plaintiff was also encouraged to "continue to ambulate a little more each day." *Id*. Significantly, Plaintiff's discharge instructions where Jenny R. Speranza, M.D., her colostomy surgeon, imposed a 10-lb. lifting restriction for six weeks following the surgery. *Id*. at 458. The record is devoid of any evidence that the lifting constriction was extended beyond six weeks, or that any other treatment provider imposed any lifting restriction. *See Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (holding ALJ could rely on absence of findings by any physician concerning the claimant's alleged inability to sit for prolonged periods in deciding whether the claimant could resume her past relevant work) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)). Accordingly, the ALJ's determination that Plaintiff could perform light work is supported by substantial evidence in the record.

Nor did the ALJ abuse his discretion in declining to admit into the record several third-party statements[6] Plaintiff submitted fewer than five days before the scheduled administrative hearing in violation of the so-called "five-day rule." Although Plaintiff admits she did not timely provide the statements, Plaintiff maintains the ALJ had discretion to decline or consider the evidence and in the instant case, the ALJ's duty to develop the record required the ALJ to accept the statements into the record. Plaintiff's Memorandum at 18-21. Defendant maintains the ALJ's discretion to admit belatedly proffered evidence into the record is limited to three separately enumerated exceptions,

[6] The so-called "third-party statements" Plaintiff maintains should have been added to the record were separately filed as a supplemental transcript (Dkt. 10) ("Proffered Statements"), and consist of three statements by various associates of Plaintiff, each of whom confirms that Plaintiff experiences pain and discomfort as a result of numerous medical conditions. None of the three writers is a medical provider requiring consideration by the ALJ or the court as medical evidence of Plaintiff's claimed disability. 20 C.F.R. § 404.1527 (defining what qualifies as medical evidence and describing weight to be afforded medical evidence).

none of which applies here. Defendant's Memorandum at 23-26 (citing 20 C.F.R. § 416.1435). In reply, Plaintiff merely refers to Defendant as failing to "meaningfully response" with regard to this argument. Plaintiff's Reply at 5. Here, the ALJ did not abuse his discretion by declining to admit the belatedly proffered statements into the record.

As relevant, the regulations provide that disability benefits claimants "must make every effort to ensure that the administrative law judge receives all of the evidence and must inform us about or submit any written evidence ... no later than 5 business days before the start of the scheduled hearing," 20 C.F.R. § 416.1435(a) ("§ 416.1435(a)"), and the failure to comply with this requirement may result in the ALJ declining to consider such evidence unless one of several exceptions is met. *Id.* These exceptions include that the claimant (1) was misled by the SSA; (2) was prevented from informing the SSA about or submitting the evidence because of a physical, mental, educational, or linguistic limitation; or (3) was prevented from timely informing or submitting the evidence to the SSA by some unusual, unexpected, or unavoidable circumstance beyond the claimant's control such as: (i) serious illness preventing the claimant from contacting the SSA; (ii) death or serious illness of an immediate family member; (iii) the destruction or damage by fire or other accidental cause of important records; or (iv) despite actively and diligently seeking such evidence from a source, the evidence was not received or was received fewer than five business days prior to the hearing. 20 C.F.R. § 416.1435(b) ("§ 416.1435(b)"). Here, not only does Plaintiff not deny the third-party statements were proffered fewer than five days prior to the scheduled administrative hearing in violation of § 416.1435(a), but Plaintiff also fails to assert that

such noncompliance is within any of the exceptions under § 416.1435(b); rather, Plaintiff urges this court to make a further exception because she was proceeding *pro se*, and accepting the statements would be in furtherance of the ALJ's duty to develop the record. Plaintiff's Memorandum at 18-21; Plaintiff's Reply at 5. Not only does Plaintiff fail to point to any case law permitting the ALJ to create an exception beyond those provided by the regulations, but the ALJ is not required to further develop the record in the absence of a gap in the record. *See Stone v. Commissioner of Social Security*, 767 Fed.Appx. 207, 208 (2d Cir. 2019) (citing *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996) (ALJ required to obtain additional medical records to develop the record only where gaps preclude assessing whether claimant is disabled)). Moreover, a plain review of the third-party statements establishes that even if considered, the statements would not warrant a different conclusion regarding the severity of Plaintiff's impairments. Accordingly, the ALJ did not err or abuse his discretion in declining to accept the belatedly proffered statements.

The ALJ's Decision thus is supported by substantial evidence in the record.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 11) is DENIED; Defendant's Motion (Dkt. 13) is GRANTED. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: August 31st, 2020
Buffalo, New York